[Cite as *Stalder v. Bucher*, 2019-Ohio-936.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MONROE COUNTY

DAVID STALDER, ANO.,

Plaintiffs-Appellees,

v.

JOHN R. BUCHER ET AL.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 17 MO 0017**

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2013-234

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Reversed
Judgment for Appellants

---

*Atty. Richard A. Yoss, Atty. Ryan M. Regel*, Yoss Law Office, 122 North Main Street, Woodsfield, Ohio 43793, for Plaintiffs-Appellees, and

*Atty. Scott D. Eickelberger, Atty. William J. Taylor, Atty. David J. Tarbert, Atty. Ryan H. Linn*, Kincaid, Taylor & Geyer, 50 North Fourth Street, Zanesville, Ohio 43702, for Defendants-Appellants.

Dated:
March 13, 2019

---

**Donofrio, J.**

{¶1}   Defendants-appellants, John R. Bucher, Jan Bucher Carmichael, Brian Castilow, Henry Carter Castilow, Ann Sharon Castilow, Fred L. May, Dale L. Binkley, Elizabeth Miller, Michael Vreeland, and Susan Leach Swisher, appeal the judgment of the Monroe County Common Pleas Court granting summary judgment in favor of plaintiffs-appellees, David and Sherrie Stalder, on their quiet title action concerning mineral rights.

{¶2}   In 1946, Godfrey Winkler conveyed 110.25 acres of real property (the property) to his daughter Anna Winkler.  The deed from Godfrey to Anna contained the reservation "[e]xcepting and reserving therefrom all oil and gas in the underlying said premises."  (First Amended Complaint, Exhibit B).  Godfrey passed away intestate in 1947.  Anna and her six siblings each inherited an equal 1/7 share of the oil and gas rights.

{¶3}   In 1955, Anna passed away intestate and without children.  As such, Anna's rights in the surface property and her share of the oil and gas rights went to her siblings.  This meant that Anna's siblings now each owned an equal 1/6 share of the property's surface and oil and gas interests.  Appellants are Anna's siblings' heirs.

{¶4}   In 1956, Anna's siblings conveyed the property by quit claim deed to Glen and Juanita Stalder.  The 1956 deed contained the following reservation:

> But excepting and reserving, however, unto the grantors, their heirs and assigns, all of the oil, gas, coal and all other minerals of a similar or dissimilar nature on, within and underlying the above three tracts of land, together with all of the leasing and mining rights and privileges belonging thereto.

(First Amended Complaint, Exhibit C).

Case No. 17 MO 0017

{¶5} In 2001, Glen and Juanita deeded the property to appellees. On May 15, 2013, appellees filed an affidavit pursuant to R.C. 5301.252. This affidavit declared that appellants had abandoned their interest in the mineral rights of the property and that, due to the self-executing nature of the 1989 Ohio Dormant Mineral Act (DMA), the mineral rights vested in appellees. In response to the affidavit, appellants filed a claim to preserve the mineral rights to the property pursuant to the 2006 DMA.

{¶6} On May 28, 2013, appellees filed this quiet title action seeking a declaratory judgment that appellants' mineral rights in the property were abandoned. Appellees subsequently filed a motion for summary judgment arguing that because the mineral rights vested before the 2006 DMA became effective, the 1989 DMA applied and appellants' claims to the mineral rights under the property were abandoned. In the alternative, appellees argued that appellants' mineral rights were extinguished pursuant to the Marketable Title Act (MTA). The trial court granted appellees' motion holding that the mineral rights vested in appellees pursuant to the 1989 DMA. The trial court did not address the 2006 DMA or the MTA.

{¶7} Appellants appealed to this court. In *Stalder v. Bucher*, 7th Dist. No. 14 MO 0010, 2017-Ohio-725, we reversed the trial court's judgment and held that, pursuant to *Corban v. Chesapeake Exploration, L.L.C.*, 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.3d 1089, the 2006 DMA applied to any action filed after June 30, 2006. *Stalder* at ¶ 10-12. Because the trial court made no ruling concerning the 2006 DMA or the MTA, we remanded the action for further proceedings.

{¶8} On remand, both parties filed reciprocal motions for summary judgment. Appellees argued that the MTA applied and extinguished any interest appellants had in the property, including mineral interests. Appellants argued that the 2006 DMA applied and that appellees did not follow the proper procedure to declare the mineral interest abandoned.

{¶9} In a judgment entry dated August 29, 2017, the trial court granted appellees' motion for summary judgment holding that appellants' interest in the property's minerals was extinguished pursuant to the MTA. Appellants timely filed this appeal on September 28, 2017. Appellants now raise two assignments of error.

{¶10} Appellants' first assignment of error states:

THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING PLAINTIFF-APPELLEES' MOTION FOR SUMMARY JUDGMENT PURSUANT TO THE MARKETABLE TITLE ACT AS THE 2006 DMA IS THE SPECIFIC STATUTE THAT PROPERLY CONTROLS A LANDOWNER'S ABILITY TO EXTINGUISH SEVERED MINERAL INTERESTS.

{¶11} Appellants argue that the trial court erred when it applied the MTA in its ruling on appellees' motion for summary judgment. Appellants argue that, pursuant to *Corban*, the 2006 DMA applies to all cases concerning mineral rights, not the MTA.

{¶12} An appellate court reviews a trial court's summary judgment decision de novo, applying the same standard used by the trial court. *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶ 5. A motion for summary judgment is properly granted if the court, upon viewing the evidence in a light most favorable to the nonmoving party, determines that: (1) there are no genuine issues as to any material facts; (2) the movant is entitled to judgment as a matter of law, and (3) the evidence is such that reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party. Civ. R. 56(C); *Byrd v. Smith*, 110 Ohio St. 3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10.

{¶13} Summary judgment is appropriate when there is no genuine issue as to any material fact. A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.,* 104 Ohio App.3d, 598, 603, 662 N.E.2d 1088 (8th Dist. 1995), citing *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

{¶14} Pursuant to the MTA, a person who has an unbroken chain of title of record to any interest in land for 40 years or more has a marketable record title to such interest. R.C. 5301.48. A "marketable record title" is defined as "a title of record, as indicated in section 5301.48 of the Revised Code, which operates to extinguish such interests and claims, existing prior to the effective date of the root of title, as are stated in section 530.1.50 of the Revised Code." R.C. 5301.47(A). "Root of title" is defined as "that conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by such person, upon which he relies as a basis for the marketability

of his title, and which was the most recent to be recorded as of a date of forty years prior to the time when marketability is being determined." R.C. 5301.47(E). The effective date of the root of title is the date it was recorded. R.C. 5301.47(E).

{¶15} On December 13, 2018, the Ohio Supreme Court released its opinion in *Blackstone v. Moore*, Slip Opinion No. 2018-Ohio-4959. In *Blackstone*, the Ohio Supreme Court applied the MTA and concluded that an oil and gas royalty right in real property was preserved.

{¶16} The MTA does not differentiate between different types of interests; it applies to all interests. *Pollock v. Mooney*, 7th Dist. No. 13 MO 9, 2014-Ohio-4435, ¶ 21. Therefore, the MTA can be used to extinguish or preserve oil, gas, and mineral interests.

{¶17} Likewise, the 2006 DMA can be used to preserve oil, gas, and mineral interests or to have those interests declared abandoned. See generally *Greer v. Frye*, 7th Dist. No. 14 BE 0032, 2017-Ohio-4035.

{¶18} Recently, this court, citing *Blackstone*, found that an oil and gas royalty interest is subject to both the MTA and the DMA. *Hickman v. Consolidation Coal Co.*, 7th Dist. No. 17 CO 0012, 2019-Ohio-492, ¶ 24. In that case, we noted that the oil and gas interest at issue was recorded before the enactment of the 2006 DMA and before the appellants became the surface owners of the property at issue. *Id.* at ¶ 25. The same is the case here. The oil and gas interest at issue was recorded in 1946, long before the 2006 DMA was enacted and long before appellants became the surface owners of the property in 2001.

{¶19} Because an oil and gas interest is subject to both the MTA and the DMA, the trial court did not err in finding the MTA applicable in this case.

{¶20} Accordingly, appellants' first assignment of error lacks merit and is overruled.

{¶21} Appellants' second assignment of error states:

> NOTWITHSTANDING ASSIGNMENT OF ERROR NO. 1, THE TRIAL COURT ERRED AS A MATTER OF LAW IN HOW IT APPLIED THE MARKETABLE TITLE ACT.

**{¶22}** Appellants alternatively argue that the trial court incorrectly applied the MTA when it declared their mineral interests extinguished.

**{¶23}** Appellants raise two arguments within this assignment of error. Because their second argument is dispositive, we will only address the second argument.

**{¶24}** Appellants argue that an exception to the MTA found in R.C. 5301.49(A) preserves their mineral interests.

**{¶25}** R.C. 5301.49(A) provides that record marketable titles are subject to:

> All interests and defects which are inherent in the muniments of which such chain of record title is formed; provided that a general reference in such muniments * * * to * * * interests created prior to the root of title shall not be sufficient to preserve them, unless specific identification be made therein of a recorded title transaction which creates such * * * interest; and provided that possibilities of reverter, and rights of entry or powers of termination for breach of condition subsequent, which interests are inherent in the muniments of which such chain of record title is formed and which have existed for forty years or more, shall be preserved and kept effective only in the manner provided in section 5301.51 of the Revised Code.

**{¶26}** The Ohio Supreme Court set out a three-step inquiry as specified in R.C. 5301.59(A):

> (1) Is there an interest described within the chain of title? (2) If so, is the reference to that interest a "general reference"? (3) If the answers to the first two questions are yes, does the general reference contain a specific identification of a recorded title transaction?

*Blackstone*, 2018-Ohio-4959, at ¶ 12. If, however, the answer to the second question is no and the reference is instead a specific reference, then there is no need to proceed to the third prong. *Id.* at ¶ 15. In the case of a specific reference, the exception in R.C. 5301.59(A) applies and the interest is preserved.

**{¶27}** Because R.C. 5301.59 does not define the terms "general" and "specific," the *Blackstone* Court applied the ordinary meanings of the terms. The Court described

Case No. 17 MO 0017

"general" as being "'marked by broad overall character without being limited, modified, or checked by narrow precise considerations: concerned with main elements, major matters rather than limited details, or universals rather than particulars: approximate rather than strictly accurate.'"  *Id.* at ¶ 13, quoting Webster's Third New International Dictionary 944 (2002).  The Court described "specific" as being "'characterized by precise formulation or accurate restriction (as in stating, describing, defining, reserving): free from such ambiguity as results from careless lack of precision or from omission of pertinent matter.'"  *Id.* at ¶ 14, quoting Webster's Third New International Dictionary at 2187.  The Court pointed out that if a reference is specific, it is not a general reference.  *Id.*

{¶28}  The 1956 deed, contains the following mineral right reservation:

> But excepting and reserving, however, unto the grantors, their heirs and assigns, all of the oil, gas, coal and all other minerals of a similar or dissimilar nature on, within and underlying the above three tracts of land, together with all of the leasing and mining rights and privileges belonging thereto.

(First Amended Complaint, Exhibit C).

{¶29}  Immediately preceding the above reservation, the 1956 deed also contains the following reference to the prior deed and prior owners of the property at issue:

> And being the same premises that were conveyed to Anna S. Winkler by Godfrey Winkler, widower, by deed dated January 18, 1946, and recorded in the recorder's office of Monroe County, Ohio, in deed book no. 118, at page 201, as instrument number 78263. The said Anna S. Winkler having heretofore died intestate, left as her heirs at law, with the respective spouses of such of them as are married, the grantors herein.

(First Amended Complaint, Exhibit C).

{¶30}  These provisions satisfy R.C. 5301.49(A).  The answer to the first question is yes:  the 1956 deed that constitutes the root of title states that it is subject to the oil, gas, and mineral reservation.  Thus, we must consider whether the reference is general or specific.

Case No. 17 MO 0017

**{¶31}** The reference here is not a "general reference." Instead, it meets the definition of a specific reference as set out by *Blackstone*. The reference to the interest includes details and particulars about the interest in question. It describes what type of interest is created, that being "all of the oil, gas, coal and all other minerals of a similar nature on, within and underlying" the three specifically described tracts of land. It also specifies that these are the same premises conveyed by Godfrey Winkler to Anna Winkler by deed dated January 18, 1946. It also lists the specific deed book and page numbers where the original reservation can be found. Considering all of the above details that describe and define the reference, we can conclude that the reference "'is free from such ambiguity as results from careless lack of precision or from omission of pertinent matter.'" *Blackstone*, at ¶ 14, quoting Webster's Third New International Dictionary at 2187. In other words, the reference is specific.

**{¶32}** Because the reference to appellants' interest is a specific reference, our inquiry ends here. The exception in R.C. 5301.59(A) applies and the interest is preserved.

**{¶33}** Appellants' interest was sufficiently preserved per the terms of the MTA. Thus, the trial court erred when it extinguished appellants' interest because reference to the reserving deed was sufficiently specific.

**{¶34}** Accordingly, appellants' second assignment of error has merit and is sustained.

**{¶35}** For the reasons stated above, the trial court's judgment is hereby reversed. Judgment is entered for appellants preserving the mineral interest in their favor.

Waite, P. J., concurs.

Robb, J., concurs.

Case No. 17 MO 0017

_____

For the reasons stated in the Opinion rendered herein, appellants' first assignment of error is overruled. Appellants' second assignment of error is sustained. It is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is reversed and judgment is entered for appellants preserving the mineral interest in their favor. Costs to be taxed against Appellees.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**