[Cite as *West v. Bode*, 2019-Ohio-4092.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MONROE COUNTY

WAYNE L. WEST et al.,

Plaintiffs-Appellants,

v.

C.J. BODE et al.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 MO 0017**

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2017-026

**BEFORE:**
Carol Ann Robb, Gene Donofrio, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Reversed and Remanded.

---

*Atty. Ryan M. Regel*, Yoss Law Office, 122 N. Main Street, Woodsfield, Ohio 43793, for Plaintiffs-Appellants and

*Atty. Charles H. Bean,* Thornburg & Bean, 113 West Main Street, P.O. Box 96, St. Clairsville, Ohio 43950 for Defendants-Appellees.

Dated:  September 30, 2019

_____

**Robb, J.**

{¶1}    Plaintiff-Appellants Wayne and Rusty West ("the landowners") appeal the decision of the Monroe County Common Pleas Court granting summary judgment in favor of Defendant-Appellees John Christman et al. ("the royalty holders").  The landowners sought a declaration that the severed one-half of the royalty in the oil and gas underlying their land was extinguished.  The royalty holders intervened, filed a counterclaim to declare they owned this royalty interest, and sought summary judgment on the basis that the Marketable Title Act ("MTA") does not apply to mineral interests.  As argued by the landowners, the trial court erred in holding a mineral interest cannot be extinguished under the MTA due to the existence of the more specific Dormant Mineral Act ("DMA").  Extinguishment under the MTA and abandonment under the DMA are distinct tests and rights, which do not irreconcilably conflict.  The grant of summary judgment on this ground is reversed.

{¶2}    Contrary to the landowners' next contention, the royalty holders' chain of title did not demonstrate a lack of standing to file the counterclaim as an auditor's deed demonstrates how their predecessor obtained the subject royalty interest.  The landowners then ask this court to declare the royalty interest extinguished because it was not specifically referred to or identified in their root of title or in the muniments of their subsequent chain of title.  They suggest no other recorded instruments can be viewed, while the royalty holders argue recordings in their separate chain of title for the royalty interest preserved the interest.  Because the trial court did not reach this issue, the case is remanded for application of the MTA.

STATEMENT OF THE CASE

{¶3}    In 1902, George L. Parks transferred to C.J. Bode and George T. Nalley "1/2 part of his royalty of all of the oil and gas in an under" his land in Bethel Township, Monroe County, estimated to contain 66 acres.  This "Sale of Royalty" was recorded in the Lease Records at Volume 318, Page 38.  This 1902 instrument created the royalty interest at issue in this case.

**{¶4}** In 1929, Parks transferred his Bethel Township property to Lettie West in a warranty deed describing approximately 40 acres (in Range 7, Township 5, Section 1) and 28 acres (in Range 6, Township 4, Section 31) for an approximate total of 68 acres ("the West property"). The deed advised: "The one half royalty is reserved by grantor in aforesaid tracts as sold to C.J. Bode and George T. Nalley." The deed for the West property was recorded in the Deed Records at Volume 99, Page 398.

**{¶5}** In 1959, Lettie West died, and the West property was transferred to George E. West through a certificate issued by the probate court and recorded in the deed records. This certificate of transfer described the 68 acres, attested it was the same premises conveyed in the 1929 deed from Parks to Lettie West at Volume 99, Page 398, and made no reference to any reservation or exception.

**{¶6}** In 1996, George West transferred the West property to Appellant Wayne West. The recorded general warranty deed described the 68 acres and noted it was the same premises conveyed by Parks to Lettie West in 1929 at Volume 99, Page 398. The deed stated: "Except all easements * * * and reservations of record."

**{¶7}** In 2002, Wayne West conveyed to Appellant Rusty West just over 5 acres platted out of the West property. The surveyor's description attached to the deed stated: "Subject to all legal * * * reservations, and zoning regulations of record."

**{¶8}** On February 13, 2017, Appellants Wayne and Rusty West (hereinafter "the landowners") filed a complaint for declaratory judgment alleging the one-half oil and gas royalty interest originally granted to Bode and Nalley by Parks was extinguished under the MTA. The complaint alleged: the 1959 certificate of transfer was the landowners' root of title; it made no reference to the mineral interest previously severed; the deeds in their chain of title subsequent to the root did not refer to the severed mineral interest; no preserving notice was filed; and no other exceptions in R.C. 5301.49 or R.C. 5301.53 were applicable.

**{¶9}** The landowners attached to their complaint the aforementioned recorded instruments. They also attached instruments recorded in 1916 which showed conveyances of the subject one-half royalty interest (which was severed and sold to Bode and Nalley in 1902). As to the Nalley interest: Nalley executed a deed in March 1916 transferring half of his interest to E.J. Wichterman, who in turn transferred half of his new interest to Clara Thompson the next day; and Nalley transferred the other half of his

interest in April 1916 to A.D. McVey, who conveyed it to M.M. McMann the next day. As for Bode, he transferred his interest to Clara Thompson and E.J. Wichterman in April 1916.

{¶10} After these transactions, Wichterman, Thompson, and Mann were the owners of the subject royalty interest. In addition to naming these three people as defendants, the landowners also named Bode, Nalley, and McVey and the unknown heirs, devisees, executors, administrators, relicts, next of kin, and assigns of the six defendants. None of these defendants appeared in this action.

{¶11} A motion to intervene as defendants and counterclaimants was filed by the royalty holders, who are Appellees John L. Christman, Katherine Haselberger, and Charlotte McCoy. The trial court granted the motion to intervene, and the royalty holders filed an answer and a counterclaim seeking declaratory judgment and quiet title as to the subject royalty interest. The royalty holders explained that a 2007 recorded certificate of transfer issued by the probate court shows they inherited the royalty interest from Nova Christman, who recorded a notice in 1977 to preserve the royalty interest he purchased in 1944 at an auditor's forfeited land sale.

{¶12} The 1944 auditor's deed shows Nova Christman purchased forfeited property in Bethel Township described as follows:

Being the 1/16 or 1/2 of the 1/8 royalty of oil and gas[1] in the name of Ed Westerman et al, under 40 acres, Range 7 - Township 5 - Section 1, se ne (Monroe County Lease Records Vol. 38 page 318) land now owned in name of Lettie West. Any oil and gas in lines to credit of same. Listed by the Reno Oil Company. Being 1/16 or 1/2 of the 1/8 royalty of oil and gas in the name of Ed Westerman, et al, under 26 acres, Range 6 - Township 4 - Section 31, nw sw (Monroe County Lease Records - Vol. 38 page 318) land now in the name of Lettie West. Any oil and gas in lines to credit of same. Listed by the Reno Oil Company.

---

[1] These fractions employ the usual 1/8 royalty payable to the lessor in a traditional lease at the time. In 1902, Parks conveyed 1/2 of his royalty, which was expressed by the auditor in 1944 as 1/2 of 1/8 (or 1/16). Likewise, the royalty holders seek a declaration they own "1/16th or ½ / 1/8th royalty of oil and gas" (Counterclaim at ¶ 6); elsewhere, they ask for 1/16, which is what the trial court granted. Tracking the entire prior fractional language may be preferable.

(Monroe County Deed Records Volume 116, Page 109.) Note this deed specifies that Lettie West owned the land burdened by the one-half royalty. And, it twice identifies Volume 38, Page 318 of the Lease Records, which is where the 1902 instrument originally conveying the subject royalty interest is recorded.[2]

{¶13} The notice Nova Christman caused to be recorded in February 1977 was notarized; as authority for the recording, the notice cited R.C. 5301.51 and R.C. 5301.52 (the MTA statutes providing for a preservation notice, also called a notice of claim). (Monroe County Deed Records Volume 171, Page 746.) The preservation notice (at tract 5) recited the above-quoted language of the auditor's deed (which included the volume and page of the 1902 sale of royalty and Lettie West's name as the owner of the land in 1944); it also said the subject royalty interest was acquired through the 1944 auditor's deed (which was also identified by volume and page).

{¶14} This information was all repeated in the 2007 recorded certificate of transfer (and two amended certificates recorded the same year), which shows the royalty holders received the royalty interest from the estate of Nova Christman. The royalty holders also asserted defenses such as: the MTA does not apply to extinguish mineral interests due to the enactment of the DMA; an auditor's deed creates a new and perfect title which cannot be contested after a one-year statute of limitations; and title transactions existed.

{¶15} On April 27, 2018, the royalty holders filed a motion for summary judgment arguing the landowners failed to state a claim because the provisions of the DMA control over the provisions of the MTA. They argued the MTA's concept of extinguishment cannot be used for mineral interests due to the DMA's more specific abandonment procedures (including the notice required and the ability to preserve the interest even after the 20-year period) which they urged irreconcilably conflicted with the MTA's 40-year period, lack of pre-extinguishment notice, label of "null and void," and prohibition on reviving an interest by a title transaction after nullification. In response, the landowners pointed out this argument was contrary to *Blackstone v. Moore*, 7th Dist. Monroe No. 14 MO 0001, 2017-Ohio-5704.

---

[2] The 40 acres plus 26 acres in the auditor's deed corresponds to the 1902 sale of royalty where George Parks estimated the acreage of the land subject to the royalty was 66 acres. We note the deeds transferring the land beginning in 1929 speak of 40 plus 28 acres.

{¶16} The royalty holders' motion for summary judgment, in setting forth the facts, reviewed the title transactions in their chain of title. They attached the 1944 auditor's deed, the 1977 preservation notice, and the 2007 certificates of transfer (which were also attached to their counterclaim), along with an affidavit attesting those recorded documents were true copies. This motion did not alternatively seek summary judgment on the issue of extinguishment (in case the trial court found the MTA applied to mineral interests). The royalty holders' May 25, 2018 reply in support of summary judgment added the argument that title transactions can be found in the separate chain of title for a royalty interest, citing *Heifner v. Bradford*, 4 Ohio St.3d 49, 446 N.E.2d 440 (1983).

{¶17} On April 30, 2018, the landowners filed a summary judgment motion arguing the one-half oil and gas royalty interest (severed in 1902) was extinguished under the MTA. The landowners noted the severed royalty interest, although referenced in the 1929 deed transferring the property to Lettie West, was not mentioned in the 1959 certificate of transfer (from her estate) which they presented as their root of title. The landowners claimed the severed royalty interest was not referenced in the recorded documents transferring the West property between 1959 and 1999 (the 40-year period beginning with their root of title). They also relied on the holding that a deed stating "subject to all coal, oil and gas reservations heretofore made" is a general reference insufficient to prevent extinguishment. *See Landefeld v. Keyes*, 7th Dist. Monroe No. 548 (June 17, 1982).

{¶18} In response, the royalty holders claimed the root of title for Rusty West's land may be the 1959 certificate of transfer but the root of title for Wayne West's land should be the 1929 deed. In any event, they asserted the royalty chain of title can be viewed under the MTA to ascertain if it contains its own preserving notice and/or title transaction under the *Heifner* case. In reply, the landowners did not address the cited case but suggested their own chain of title was the sole relevant chain.

{¶19} The summary judgment motion filed by the landowners alternatively argued the royalty holders failed to show they owned the subject royalty interest and thus lacked standing because the auditor's deed conveying a royalty interest to the royalty holders' predecessor said the interest was "in the name of Ed Westerman et al." prior to the forfeiture sale (a name which was allegedly not in the chain of title). The royalty holders responded that the reference to "Ed Westerman" was an apparent scrivener's error in transcribing the former royalty owner's name, "E.J. Wichterman." (They also noted "et

al." encompassed the other royalty owners who shared this one-half royalty until they lost it through forfeiture.)  The royalty holders pointed out the 1944 auditor's deed gave their predecessor, Nova Christman, a new title which:  could not be contested after the one-year statute of limitations; specified the one-half royalty of oil and gas purchased by Nova Christman was the one severed from the land owned by Lettie West (the landowners' predecessor); and contained pinpoint references to the volume and page of the lease records where the original severance was recorded.

**{¶20}** On August 21, 2018, the trial court granted the motion for summary judgment filed by the royalty holders and declared they were the owners of the subject royalty interest.  The court explained the royalty holders had an interest derived from the 1944 auditor's deed to Nova Christman who filed a notice of claim in 1977 and whose interest was transferred to the royalty holders by the 2007 certificates of transfer.  Rather than addressing the effect of these recorded documents on the landowners' extinguishment claim, the trial court concluded the DMA was a more specific statute on the abandonment of mineral interests as compared to the more general MTA.  The court found the DMA irreconcilably conflicted with the MTA because the DMA had a notice procedure after a 20-year period with an opportunity to preserve even after the notice, whereas the MTA did not require notice by the landowner and involved automatic "abandonment" after a 40-year period.  The trial court concluded the landowners failed to state a claim under the MTA because the MTA could not be used to extinguish a mineral interest.  The landowners filed a timely notice of appeal.

Marketable Title Act

**{¶21}** Pursuant to R.C. 5301.48, if a person has an unbroken chain of title of record to any interest in land for 40 or more years, he has marketable record title as defined in R.C. 5301.47, subject to the matters in R.C. 5301.49.  This statute further states:  "A person has such an unbroken chain of title when the official public records disclose a conveyance or other title transaction, of record not less than forty years at the time the marketability is to be determined, which said conveyance or other title transaction purports to create such interest" in the person or one of his predecessors in title "with nothing appearing of record to divest" him of the purported interest.  R.C. 5301.48.

**{¶22}** A marketable record title "operates to extinguish" all interests existing prior to the root of title.  R.C. 5301.47(A), citing R.C. 5301.50.  The root of title is the

"conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined." R.C. 5301.47(E). Pursuant to R.C. 5301.50: subject to R.C 5301.49, the record marketable title shall be held free and clear of all interests which depend upon events occurring prior to the effective date of the root of title. R.C. 5301.50. "All such interests * * * are hereby declared to be null and void." *Id.*

**{¶23}** As mentioned in R.C. 5301.48 and R.C. 5301.50, the record marketable title shall be subject to certain limitations listed in R.C. 5301.49, which include in pertinent part: (A) interests inherent in the documents in the chain of title (but if the reference is general, there must be specific identification of a recorded title transaction creating the interest); (B) interests preserved by the filing of proper notice under R.C. 5301.51; and (D) interests arising out of a title transaction recorded subsequent to the root of title from which the unbroken chain of title is started, provided this recording shall not revive an extinguished interest. R.C. 5301.49(A),(B),(D). (Other limitations involve same-owner possession for 40 years, rights from adverse possession partly occurring after the root, and the exceptions in R.C. 5301.53 such as coal). The limitations listed in R.C. 5301.49 are considered exceptions to the MTA. *Spring Lakes, Ltd. v. O.F.M. Co.*, 12 Ohio St.3d 333, 335, 467 N.E.2d 537 (1984). They "serve as a shield to protect from extinguishment the rights therein excepted * * *." *Id.*, quoting *Heath v. Turner*, 309 N.C. 483, 308 S.E.2d 244, 249 (1983).

**{¶24}** The exception in division (A) of R.C. 5301.49 was recently applied in *Blackstone v. Moore*, 155 Ohio St.3d 448, 2018-Ohio-4959, 122 N.E.3d 132, ¶ 1-2, 18, which will be discussed further infra. The exception in division (B) cites to R.C. 5301.51, which provides a person claiming an interest in land may preserve it by filing a notice in compliance with R.C. 5301.52 during the 40-year period after the root of title (of the person whose record title would otherwise be marketable). R.C. 5301.51(A). The prior version of R.C. 5301.52 (effective when the 1977 preservation notice was recorded) required the recorder to record the notice in the county deed records and index the notice

in the grantee deed index under the name of the claimant and in a notice index under the description of the real estate in the notice.[3]

{¶25} As for the exception in division (D) of R.C. 5301.49, the Supreme Court held the title transaction preserving a mineral interest can be part of an independent chain of title (the chain for the mineral interest). *Heifner v. Bradford*, 4 Ohio St.3d 49, 446 N.E.2d 440 (1983), paragraph 1 of syllabus (pre-DMA case applying the MTA to ascertain whether a mineral interest was extinguished). In *Heifner*, the mineral interest was originally severed from the land in 1916. The surface owner's root of title was a 1936 deed; there was no mention of the prior mineral reservation in that root of title or in the subsequent muniments of that title. In the chain of title for the severed mineral interest, a title transaction was recorded in the recorder's office in 1957 (when a will and affidavits of transfer were recorded to memorialize a prior probate transfer of the mineral interest). *Heifner*, 4 Ohio St.3d at 51 (while observing the root of title for mineral interest was the 1916 deed).

{¶26} The Supreme Court found the 1957 title transaction recorded in the mineral owner's chain of title prevented extinguishment of the mineral interest due to the application of R.C. 5301.49(D). A title transaction recorded in the mineral chain of title after the effective date of the other party's root under R.C. 5301.49(D) was equivalent to filing a "notice of claim" during the 40-year period (under R.C. 5301.51 and R.C. 5301.52). *Id.* at paragraph 2 of syllabus.

{¶27} The *Heifner* Court expressly *rejected* the argument that R.C. 5301.49(D) required the "title transaction under that section to arise from the same chain of title as that under which there is claimed to be a marketable record title." *Id.* at 51-53. The Court also noted it was unpersuaded by the surface owner's arguments that the purpose of the MTA was to limit title searches to 40 years and the title examiner should not have to search the title to its origin and work forward to discover transactions in the mineral chain. *Id.* at fn. 4, 6. *See also Blackstone*, 155 Ohio St.3d 448 at ¶ 16 (citing *Heifner* when observing, "we have declined to view the act's purpose as solely to limit the length of time required for title searches").

---

[3] A 1988 amendment added a requirement for the notice to state the name of the record owner of the land affected by the notice, including the recording information of the instrument by which the record owner of the land acquired title; the recorder was given a corresponding responsibility to index the notice in the grantor deed index under the name of the record owner of the land affected by the notice.

**{¶28}** We note the *Heifner* situation (involving a separate chain for an interest created prior to the root of title but the recording of a title transaction in that separate chain after the date of the root of title) has been distinguished from the situation where the interest sought to be extinguished was not even created until after the date of the root of title. *Spring Lakes*, 12 Ohio St.3d at 334-335, fn.1 (the MTA has no application to an easement created after the root of title because the MTA operates to extinguish interests existing prior to the root of title). If the mineral interest was not severed until after the root of title, the *Spring Lakes* rule applies, but if a mineral interest was severed before the root of title, then the MTA anticipates a title examination of the mineral chain of title under *Heifner* (where the mineral owner is claiming an exception because a title transaction was recorded in the mineral chain subsequent to the other party's unbroken root of title).

**{¶29}** When the MTA was enacted in 1961, it expressly excepted mineral interests from its application. *See* R.C. 5301.53 (other exceptions include public utility or railroad easements, clearly observable easements, and federal government interests). A 1973 amendment eliminated the exception for mineral interests (causing the MTA to apply to mineral interests, except coal) and provided a three-year grace period before the 40-year period would expire. *Corban v. Chesapeake Exploration, L.L.C.*, 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.3d 1089, ¶ 18. In 1989, a provision for having minerals "deemed abandoned" was added to the MTA when the last statute in the series, R.C. 5301.56, was replaced with the Dormant Mineral Act. (For identification purposes, the term DMA is used to refer to abandonment under R.C. 5301.56, and the term MTA is used to refer to the extinguishment and other provisions of the MTA.)

**{¶30}** The statutes at R.C. 5301.47 through R.C. 5301.56 are to be "liberally construed to effect the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record chain of title * * *." R.C. 5301.55. Pursuant to R.C. 5301.47, the MTA's general definitions apply to all of the statutes in the series. The general definition section provides "recording" can include a filing in the probate or other court R.C. 5301.47(B)-(C). The DMA requires the qualifying title transaction to be "recorded in the office of the county recorder of the county in which the lands are located." R.C. 5301.56(B)(3)(a).

**{¶31}** The DMA provides a method to have minerals "deemed abandoned" after 20 years in the absence of a savings event. As for the title transaction type of savings

event, the DMA requires the mineral interest to be the "subject of" the title transaction. R.C. 5301.56(B)(3)(a). A mineral interest is not the "subject of" a surface deed which merely repeated a prior reservation. *See Dodd v. Croskey*, 7th Dist. Harrison No. 12 HA 6, 2013-Ohio-4257, ¶ 49 (affirmed on other grounds). The MTA does not have the same "subject of" language, and extinguishment may be avoided under the MTA by a proper reference to a prior mineral reservation in a surface deed (if there is a specific reference or specific identification of the interest). *See* R.C. 5301.49(A).

**{¶32}** The 2006 DMA added provisions requiring service of notice of abandonment on the mineral holder and allowing the mineral holder to respond in a timely manner to preserve the mineral interest even after the passing of 20 years without a savings event. *Dodd v. Croskey*, 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147. The MTA contains no notice procedure, and any preserving notice under the MTA must be filed for record during the 40-year period after the root of title. R.C. 5301.51(A). *See also* R.C. 5301.49(D) (a recording after the root cannot revive an extinguished interest).

**{¶33}** In 2016, the Ohio Supreme Court held the 1989 DMA was not self-executing and did not provide for automatic abandonment of minerals upon the passing of 20 years without a savings event. Rather, in order to have the minerals "deemed abandoned" under the 1989 DMA, a lawsuit had to be filed by the surface owner prior to the effective date of the 2006 amendment. *Corban*, 149 Ohio St.3d 512; *Walker v. Shondrick-Nau*, 149 Ohio St.3d 282, 2016-Ohio-5793, 74 N.E.3d 427; *Albanese v. Batman*, 148 Ohio St.3d 85, 2016-Ohio-5814, 68 N.E.3d 800. Now, the 2006 DMA must be utilized to have minerals "deemed abandoned." *Id.* After these holdings, various cases that were stayed pending these Supreme Court decisions were remanded by this court so the trial court could rule on unaddressed MTA extinguishment claims. *See, e.g., Warner v. Palmer*, 7th Dist. Belmont No. 14 BE 0038, 2017-Ohio-1080, ¶ 34 (pointing out the difference between abandonment and extinguishment). This leads to the landowners' first assignment of error.

ASSIGNMENT OF ERROR ONE: MTA & DMA AS HARMONIOUS

**{¶34}** The landowners set forth two assignments of error, the first of which provides:

"The trial court erred as a matter of law in granting Defendants-Appellants' Motion for Summary Judgment based upon the Ohio Dormant Mineral Act."

**{¶35}** The landowners contest the trial court's decision that the MTA cannot be used to extinguish a mineral interest due to the existence of the more specific DMA. We begin by noting the trial court's citation to *Corban* at ¶ 33 and two pre-*Corban* cases from this district. The Supreme Court's *Corban* case pertained to whether the 1989 DMA could still be utilized after the 2006 DMA added notice and post-notice-preservation procedures. When stating the 2006 DMA "applies prospectively to all claims that mineral rights have been abandoned that are asserted after its effective date," the Court was specifically answering a federal certified question about abandonment under the DMA. *Corban*, 149 Ohio St.3d 512 at ¶ 1, 33.

**{¶36}** The MTA, on the other hand, deals with extinguishment. The *Corban* Court emphasized the difference between extinguishment and abandonment. In explaining why the 1989 DMA did not automatically reunite the minerals with the surface by operation of law, the *Corban* plurality opinion distinguished the "shall be deemed abandoned and vested" language in the DMA from the "operates to extinguish" and "are hereby declared null and void" language of the MTA. *Corban*, 149 Ohio St.3d 512 at ¶ 17-18, 21 (also stating the MTA extinguished minerals "by operation of law"). A fourth justice agreed the 1989 DMA could no longer be used and wrote a concurring opinion which also emphasized the difference between the use of the word "abandoned" in the DMA and the word "extinguished" in the MTA. *Id.* at ¶ 53, 81 (Kennedy, J., concurring in judgment only on first certified question).

**{¶37}** Consequently, a majority in *Corban* found the statutory terminology and methods distinct. The various statements in *Corban* explaining why the 2006 DMA (not the 1989 DMA) is the applicable statute must be read in context; the holdings all relate to claims of abandonment brought under the DMA. *See also Albanese*, 148 Ohio St.3d 85 at ¶ 20 ("mineral rights cannot be deemed abandoned if the mineral-rights holder has not been provided notice"); *Walker*, 149 Ohio St.3d 282 at ¶ 22 ("deemed abandoned and vested").

**{¶38}** Pre-*Corban*, this district made statements that the DMA was applicable as the more specific statute. *Tribett v. Shepherd*, 7th Dist. No. 13 BE 22, 2014-Ohio-4320, 20 N.E.3d 365, ¶ 29, 34-36; *Swartz v. Householder*, 7th Dist., 2014-Ohio-2359, 12 N.E.3d 1243, ¶ 18-20. However, these holdings are not precedent on whether the MTA can be used in a claim to declare a mineral interest was *extinguished* because: (1) the issue

presented to this court in those cases was *not* whether the MTA could be asserted in an extinguishment claim relying on the 40-year provisions but was whether the DMA could be used for an abandonment claim;[4] (2) before the Supreme Court distinguished between the concepts of abandonment in the DMA and extinguishment in the MTA, the courts proceeded as if the concepts were synonymous; and (3) these cases were reversed based on the very case explaining the difference between abandonment and extinguishment (*Corban*).[5]

**{¶39}** Post-*Corban*, we reviewed a trial court decision which alternatively found abandonment under the 1989 DMA and extinguishment under the MTA. *Blackstone v. Moore*, 7th Dist. Monroe No. 14 MO 0001, 2017-Ohio-5704, 94 N.E.3d 108. In addressing arguments that the trial court should have determined whether the oil and gas royalty interest was considered a fee interest and that royalty interests are not subject to either the MTA or the DMA, this court ruled a mineral royalty interest is subject to the MTA, stating the MTA does not differentiate between types of interests but applies to all interests. *Id.* at ¶ 11-12, citing *Covert v. Koontz*, 7th Dist. Monroe No. 13 MO 8, 2015-Ohio-228, ¶ 15 (extinguishment of oil and gas royalty interest due to unbroken 40-year period after the root of title); *Pollock v. Mooney*, 7th Dist. Monroe No. 13 MO 9, 2014-Ohio-4435, ¶ 21 ("The MTA does not differentiate between different types of interests. It applies to all interests. Thus, the MTA is applicable [to the royalty interest] in this case"). Our *Blackstone* decision explained that a royalty interest could be subjected to the DMA as well. *Id.*, citing *DeVitis v. Draper*, 7th Dist. No. 13 MO 0017, 2017-Ohio-1136, 87 N.E.3d 656, ¶ 19. We subsequently concluded: "The trial court in this matter correctly determined that a royalty interest in minerals is subject to both the MTA and DMA." *Id.* at ¶ 40.

**{¶40}** We disposed of the DMA issues by holding there was no automatic abandonment under the 1989 DMA and no abandonment under the 2006 DMA as the mineral holder filed a timely claim to preserve within 60 days of the notice of

---

[4] The mineral holders in *Tribett* were attempting to defend a DMA claim and avoid the "subject to" language of the DMA by applying MTA language and arguing a deed repeating an old reservation could be a savings event for the minerals. The argument in *Swartz* was that a DMA plaintiff should not be permitted to use the 20-year DMA period because the MTA has a longer 40-year period.

[5] *Tribett v. Shepherd*, 150 Ohio St.3d 346, 2016-Ohio-5821, 81 N.E.3d 1224; *Swartz v. Householder*, 150 Ohio St.3d 341, 2016-Ohio-5817, 81 N.E.3d 1221.

abandonment. *Blackstone*, 7th Dist. No. 14 MO 0001 at ¶ 17-18. As to the MTA, we found the trial court properly allowed the surface owner to amend the complaint to add an MTA claim, even though the MTA claim was available to the surface owners at the time the complaint was filed. *Id.* at ¶ 24. Finally, we applied the MTA and found the oil and gas royalty interest was not extinguished because the 1969 root of title contained a specific reference to the prior mineral reservation. *Id.* at ¶ 28-39.

**{¶41}** The Ohio Supreme Court affirmed this court's *Blackstone* decision finding a one-half interest in an oil and gas royalty was not extinguished under the MTA due to a specific reference to it in the landowner's 1969 root of title. *Blackstone v. Moore*, 155 Ohio St.3d 448, 2018-Ohio-4959, 122 N.E.3d 132, ¶ 1-2, 18. Applying R.C. 5301.49(A), the Court rejected the argument that the root of title contained too general of a reference where the deed stated: "Excepting the one-half interest in oil and gas royalty previously excepted by Nick Kuhn, their [sic] heirs and assigns in the above described sixty acres." The Court advised the landowner that the policy arguments on specificity and title searches must be made to the legislature, noting:

> That body, if it desired, could ordain that an interest created prior to the root of title is preserved only if a reference is made to the volume and page number where the interest was created. The legislature did just that in the Dormant Mineral Act when it provided that notice to holders of mineral interests must include the "volume and page number of the recorded deed or other recorded instrument under which the owner of the surface of the lands claims title or otherwise satisfies the requirements established in [R.C. 5301.52(A)(3) ]." R.C. 5301.56(F)(2). Our role is to apply statutes as they are written, and nowhere does the Marketable Title Act require reference to the volume and page number or the date that the interest was recorded.

> *Id.* at ¶ 17.

**{¶42}** One concurring justice opined the DMA may be the exclusive remedy with regard to a mineral interest but believed the issue of whether the MTA applied to a mineral interest was not being ruled upon because it was not raised to the Court. *Id.* at ¶ 19-24 (DeGenaro, J., concurring). Although the Supreme Court in *Blackstone* did not explicitly declare that the DMA was not the exclusive remedy, the Court specifically applied the

MTA to a royalty interest to ascertain whether it was extinguished under the MTA's 40-year period. And, they did so while pointing out a difference between the MTA and the DMA, without acknowledging the statement in the concurrence, and in the context of reviewing this court's decision which held both could be used by a surface owner to obtain a mineral interest.

**{¶43}** After the Supreme Court's *Blackstone* holding, this court rejected arguments that the DMA is the exclusive remedy. *Stalder v. Bucher*, 7th Dist. Monroe No. 17 MO 0017, 2019-Ohio-936, ¶ 10-20. *See also Hickman v. Consolidation Coal Co.*, 7th Dist. Columbiana No. 17 CO 0012, 2019-Ohio-492, ¶ 21, 24. We hereby maintain that course for the reasons expressed herein.

**{¶44}** The Revised Code is to be read as an interrelated body of law with statutory provisions on the same subject matter being construed together, in pari materia. *State v. Moaning*, 76 Ohio St.3d 126, 128, 666 N.E.2d 1115 (1996). Pursuant to R.C. 1.51:

> If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.

This legislative framework requires even conflicting statutes to be applied together unless the conflict is irreconcilable. *Dillon v. Farmers Ins. of Columbus, Inc.*, 145 Ohio St.3d 133, 2015-Ohio-5407, 47 N.E.3d 794, ¶ 16-17.

**{¶45}** In other words, *only* if the conflict is irreconcilable will one statute prevail over the other. *State ex rel. Data Trace Info. Servs., LLC v. Cuyahoga Cty. Fiscal Officer*, 131 Ohio St.3d 255, 2012-Ohio-753, 963 N.E.2d 1288, ¶ 48. "All provisions of the Revised Code bearing upon the same subject matter should be construed harmoniously. This court in the interpretation of related and co-existing statutes must harmonize and give full application to all such statutes unless they are irreconcilable and in hopeless conflict." *State v. Cook*, 128 Ohio St.3d 120, 2010-Ohio-6305, 942 N.E.2d 357, ¶ 45.

**{¶46}** Reading *Corban* and *Blackstone* together, there is no conflict in applying the MTA and/or the DMA to a mineral interest. The MTA involves extinguishment after 40 years resulting in a null and void interest. R.C. 5301.50. *See also* R.C. 5301.49(D)

(no reviver by title transaction). The DMA involves an abandonment process which can be used after a 20-year absence of certain activity with notice requirements and the ability to file a post-notice-of-abandonment claim to preserve. A claim to preserve made after the 20-year period may ruin the surface holder's claim of abandonment, but it cannot revive an extinguished interest (where it is filed after the pertinent 40-year period).

**{¶47}** The fact that the MTA provides a different and separate procedure for the exercise of a different statutory right or remedy does not mean it irreconcilably conflicts with the DMA. They are co-extensive alternatives whose applicability in a particular case depends on the time passed and the nature of the items existing in the pertinent records. "[E]ach applies to a particular situation independent of the other." *Cook*, 128 Ohio St.3d 120 at ¶ 46 (while finding two statutes did not irreconcilably conflict). If the claim is extinguishment under the MTA, then the 40-year provision and the tests applicable thereto apply; if the claim is abandonment under the DMA, those statutory procedures and 20-year test of R.C. 5301.56 apply. This assignment of error has merit. The trial court erred in holding a mineral interest cannot be extinguished under the MTA due to the procedures in the DMA.

ASSIGNMENT OF ERROR TWO:  EXTINGUISHMENT

**{¶48}** The landowner's second assignment of error provides:

"The trial court erred as a matter of law in its application of the Ohio Marketable Title Act."

<u>Standing:</u>

**{¶49}** Before actually addressing the application of the MTA, which is the error alleged in the text of this assignment of error, the landowners set forth a brief argument that the royalty holders have no "standing" to make a claim in this action as they did not show they owned the subject one-half royalty interest. They base this argument on the fact that the 1944 auditor deed said the one-half royalty of oil and gas was "in the name of Ed Westerman et al." prior to the forfeiture sale. They claim this name does not appear in the chain of title. They attached deeds to their complaint showing the subject one-half oil and gas royalty interest was conveyed in 1916 to E.J. Wichterman, Clara Thompson, and M.M. Mann. The landowners named these individuals as defendants as well as their heirs and assigns, but no one appeared in the action on behalf of the named defendants.

<u>Case No. 18 MO 0017</u>

**{¶50}** The royalty holders respond by pointing out the 1944 auditor's deed provided Nova Christman a title whose validity could not be questioned once a year passed, citing R.C. 5723.13 ("no action shall be commenced, nor shall any defense be set up to question the validity of the title of the purchasers at such sale for any irregularity, informality, or omission in the proceedings relative to the foreclosure, forfeiture, or sale, unless such action is commenced or defense set up within one year after the deed to such property is filed for record"). However, this does not fully address the question of whether the one-half royalty of oil and gas received by Nova Christman in the 1944 auditor's deed is the one-half severed royalty underlying the property at issue and alleged by the landowners to have been extinguished. If so, then the royalty holders' would have standing to present their claim to the subject royalty interest via their counterclaim. The royalty holders assert the language of the auditor's deed clearly shows it conveyed the subject royalty interest.

**{¶51}** In ascertaining a party's standing to initiate an action, the court "looks to the rights of the individual parties to bring the action, as they must assert a personal stake in the outcome of the action in order to establish standing." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 23. Notably, the question of standing to present a claim to a royalty interest by presenting arguments against extinguishment of the severed royalty interest is a different question from how the landowners' MTA claim would be affected by the 1944 auditor's deed (and the subsequent recordings in the royalty chain of title which repeat the information from the auditor's deed). Although the trial court did not apply the MTA or rule on the MTA claim, the trial court did essentially reject the specific argument on standing by granting summary judgment in favor of the royalty holders. For the following reasons, the landowners did not show the royalty holders lacked standing to make a claim to the subject royalty interest (and to argue against extinguishment under the MTA).

**{¶52}** The landowners' complaint sought to declare the severed one-half royalty in oil and gas underlying their property was extinguished under the MTA. Notably, the landowners said they already owned the other one-half of the oil and gas royalty interest attached to their property as it was granted to their predecessor, Lettie West, when she purchased the property in 1929. Their submissions showed Lettie West still owned the land in 1944. The 1944 auditor's deed conveyed a severed royalty interest to the royalty

Case No. 18 MO 0017

holders' predecessor, Nova Christman, who purchased it at a forfeiture sale. This deed specifically declared that the auditor was conveying the one-half oil and gas royalty under the Bethel Township land owned by Lettie West and described as 40 acres in Range 7, Township 5, Section 1 (se ne) and 26 acres in Range 6, Township 4, Section 31 (nw sw). The 1996 deed in the landowners' chain of title described the property being conveyed to Wayne West as 40 acres in Range 7, Township 5, Section 1 (se[6] ne) and 28 acres in Range 6, Township 4, Section 31 (nw sw) in Bethel Township; it also noted this was the same premises conveyed to Lettie West from George Parks in 1929, citing that deed by volume and page.

**{¶53}** Furthermore, in describing the interest conveyed, the 1944 auditor's deed cited to the Monroe County Lease Records at Volume 38, Page 318, which is where the original severance of the subject royalty interest was recorded in 1902. The fact that the 1944 auditor's deed said the royalty was in the name of "Ed Westerman et al" prior to the forfeiture sale does not mean the deed did not transfer the one-half royalty in oil and gas which was severed from land owned (in 1944) by Lettie West by an instrument whose recording information was listed (which was the 1902 recorded sale of royalty). Contrary to the landowners' contention, they were not entitled to summary judgment on their allegation that the royalty holders lacked standing to even present a claim to the subject one-half royalty interest.

Application of MTA

**{¶54}** Related to the text of the second assignment of error, which takes issue with the application of the MTA, the landowners review how there was no reference to the severed royalty interest in the 1959 certificate of transfer and no specific reference or identification in the 1996 or 2002 deeds in their chain of title. The landowners emphasize that the royalty holders *did not contest* the landowners' particular allegation that there were no preserving references to the severed royalty interest in the following recordings in the landowners' chain of title: the 1959 certificate of transfer (from Lettie West's estate

---

[6] Appellant Wayne West's 1996 deed states, "northeast quarter of the northeast quarter," but then notes, "Reflected on the records of Monroe County Auditor as being 'southeast'." Appellant Rusty West's 2002 deed from Wayne West, carved out a parcel, contained a survey, and referred to the "southeast quarter of the northeast quarter" (as did the documents in the royalty holders' chain of title). The parties do not address this in any event.

Case No. 18 MO 0017

to George West); the 1996 deed (from George West to Wayne West); or the 2002 deed (conveying a portion of Wayne West's land to Rusty West).

**{¶55}** Instead, the royalty holders contest Wayne West's characterization of his root of title as the 1959 recorded title transaction, and they alternatively point to their own chain of title as dispositive. The royalty holders state the 1959 certificate of transfer would be the root of title for the 5 plus acres of land conveyed by Wayne West to Rusty West in the 2002 deed but would not be the root of title for the 68 acres conveyed to Wayne West in the 1996 deed. They believe the root of title for Wayne West's MTA claim would be the 1929 deed, wherein George Parks conveyed the 68 acres to Lettie West. The 1929 deed stated: "The one half royalty is reserved by grantor in aforesaid tracts as sold to J. Bode and George T. Nalley."[7] The royalty holders do not explain why they believe the 1929 deed would be the root of title for Wayne West's land.

**{¶56}** Alternatively, the royalty holders point to their own chain of title for the one-half oil and gas royalty which was severed from the land in the sale of royalty recorded in 1902. For instance, the 1944 auditor's deed conveyed to Nova Christman a one-half royalty in oil and gas underlying the land owned by Lettie West, which royalty was previously severed in a recorded instrument identified by volume and page of the lease records (which corresponds to the 1902 sale of royalty). This 1944 deed was recorded prior to the 1961 enactment of the MTA, which did not include minerals until 1973 (and also included a 3-year grace period before extinguishment could occur).

**{¶57}** Thirty years after the recording of the auditor's deed, Nova Christman recorded the 1977 preservation notice, which said the one-half royalty interest was acquired through the 1944 auditor's deed (identified by volume and page) and recited the language of the auditor's deed including Lettie West's name as the owner of the land in 1944 and the volume and page of the recorded instrument which originally severed the royalty interest (the 1902 sale of royalty). This 1977 notice was recorded 18 years after the 1959 recorded certificate of transfer, which the landowners rely on as their root of title.

---

[7] The royalty holders do not finish the argument, for instance, by arguing the quote in the 1929 deed qualifies as a specific reference to preserve the royalty interest under R.C. 5301.49(A) due to the Supreme Court's *Blackstone* holding that a root of title contained a specific reference preserving the interest where it stated: "Excepting the one-half interest in oil and gas royalty previously excepted by Nick Kuhn, their [sic] heirs and assigns in the above described sixty acres." *Blackstone*, 155 Ohio St.3d 448 at ¶ 1-2, 18.

{¶58} Thirty years after the preservation notice was recorded, certificates of transfer issued by the probate court were recorded (in 2007). These title transactions show the royalty holders received Nova Christman's royalty interest from the probate court, and they recite the same information contained in the 1977 notice.

{¶59} To demonstrate the importance of reviewing the separate chain of title for a royalty interest under the MTA, the royalty holders cite *Heifner v. Bradford*, 4 Ohio St.3d 49, 446 N.E.2d 440 (1983). We reviewed this case in the general MTA section above. In their reply brief, the landowners state the auditor's deed "was not indexed – by grantor or grantee- in such a way that a title examiner would be able to locate it" without recognizing the statutory changes since the notice was filed. *See* fn.3 supra. They state the royalty holders failed to explain how a title examiner reviewing the landowner's chain of title would be able to locate the auditor's deed; however, the royalty holders' explanation was that the landowners failed to examine the chain of title for the minerals, citing *Heifner*. The landowners do not directly address the implications of the *Heifner* case.

{¶60} As aforementioned in the statement of the case, the royalty holders did not seek summary judgment on these arguments set forth in their appellees' brief and made in response to the landowners' motion for summary judgment. The royalty holders asked for summary judgment on the basis that the MTA did not apply to minerals due to the more specific DMA. Despite the presentation of the issues concerning merits of the landowners' MTA claim to this court, the arguments in this section have not been addressed by the trial court. The landowner's assignment of error states the trial court erred in its application of the MTA. However, in their reply brief, they acknowledge: "The trial court <u>failed</u> to even address the application of the Ohio Marketable Title Act."

{¶61} "We generally refrain from ruling on arguments and claims not ruled upon by the trial court as the issues are not ripe for our review where the trial court proceeded as if they were moot due to another ruling." *Jefferis Real Estate Oil & Gas Holdings, LLC v. Schaffner Law Offices, LPA*, 7th Dist. Belmont No. 17 BE 0042, 2018-Ohio-3733, 109 N.E.3d 1265, ¶ 41. *See also Taylor v. Crosby*, 150 Ohio St.3d 344, 2016-Ohio-5820, 81 N.E.3d 1223, ¶ 1 (remanding to the trial court to address the arguments on the 2006 version of the Dormant Mineral Act which were not addressed by the appellate court as the trial court did not rule on them); *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 88-89, 585 N.E.2d 384 (1992), fn. 5; *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 360, 604 N.E.2d

138 (1992) (de novo summary judgment review does not mean the appellate court must address issues in the motions which the trial court never reached).

{¶62} It has been this court's regular position in numerous recent mineral rights cases to remand for the trial court to rule on unaddressed MTA issues where the trial court never reached the MTA's application (for instance, because it relied on only the DMA). This is especially true where the cross-motion for summary judgment did not ask for judgment on the merits of the MTA as it insisted that only the DMA applied to mineral interests. Maintaining our position, we refrain from deciding the merits of the MTA claim which the trial court did not reach.

{¶63} Accordingly, the trial court's judgment is reversed and remanded for application of the MTA. On remand, we request the trial court to rule on the merits of the MTA claim addressed in the landowners' summary judgment motion by applying the law set forth herein; before doing so, the trial court may order new submissions focused on the remaining topics and permit the royalty holders to file a cross-motion for summary judgment on the topic.

Donofrio, J., concurs.

D'Apolito, J., concurs.

Case No. 18 MO 0017

For the reasons stated in the Opinion rendered herein, the assignments of error are sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is reversed. We hereby remand this matter to the trial court for application of the Marketable Title Act according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**