# IN THE COURT OF APPEALS OF OHIO

### SEVENTH APPELLATE DISTRICT
### COLUMBIANA COUNTY

JEFFREY B. HICKMAN, ET AL.,

Plaintiffs-Appellants,

v.

CONSOLIDATION COAL COMPANY ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 17 CO 0012**

---

Civil Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2013-CV-683

**BEFORE:**
Kathleen Bartlett, Gene Donofrio, Cheryl L. Waite, Judges.

**JUDGMENT:**
AFFIRMED

*Attys. Matthew Onest and Scott Zurakowski* , 4775 Munson Street, NW, P.O. Box 36963, Canton, Ohio 44735-6963, for Appellants and

*Attys. Ashley Oliker and Stephen Chappelear*, 10 West Broad Street, Suite 2300, Columbus, Ohio 43215; *Attys. Andrew Schock and Clay Keller,* 50 South Main Street, Suite 201, Akron, Ohio 44308; *Attys. James Wherley, Jr. and Randolph Snow,* 220 Market Avenue, South, Suite 1000, Canton, Ohio 44702; *Atty. Vito Abruzzino,* East Pershing Street, Suite A, Salem, Ohio 44460, for Appellees.

Dated: February 5, 2019

---

**Bartlett, J.**

{¶1}   Plaintiffs-Appellants, Jeffrey and Leah Hickman, appeal the decision of the Columbiana County Common Pleas Court granting summary judgment in favor of Defendants-Appellees, in their declaratory judgment and quiet title claims relating to two severed mineral interests.   On appeal, Appellants argue that the trial court erred in determining that the severed mineral interests were not extinguished under the Ohio Marketable Title Act.   Appellants further argue that the trial court erred by holding that the Appellants were not entitled to a conclusive presumption of abandonment and/or cause of action under the United States Constitution.

{¶2}   For the following reasons, Appellants' first and second assignments of error are without merit, and the trial court's entry granting summary judgment in favor of the Defendants-Appellees (mineral interest holders) is affirmed.

### Facts and Procedural History

{¶3}   The instant action involves mineral rights underlying two tracts of land:  (1) approximately 16.922 acres of real estate that was transferred on June 18, 1948 from R.C. Northam and Georgia Northam to Healy Bros. & Company, which stated "EXCEPTING and reserving all the coal below the Pittsburgh No Eight seam of coal, together with []he usual and customary mining rights and rights of removal of said deep coal.  Also reserving timber on said property and the buildings, providing however that the timber and buildings are [ ] removed at such time as is necessary so that any actual stripping operations will not be inte[ ]erred with.  Also excepting and reserving the right of Grantors to use and occupy the buildings until January 1, 1949 and so much longer as their use and occupancy will not interfere with stripping operations, but said use and occupancy is not to extend beyond such time as the balance due on the purchase price is fully paid.  Also excepting and reserving all oil and gas underlying said premises." (recorded on June 25, 1948 at Volume 124, Page 128) (referred to as the "Northam reservation"); and (2) approximately 14.024 acres of real estate that was transferred on November 15, 1957 from Harry C. and Olga M. Lawlis to Pittsburgh Consolidation Coal

Case No. 17 CO 0012

Company which stated: "Reserving unto Harry C. Lawlis, the Grantor herein, his heirs, executors, administrators or assigns, all oil, coal or other minerals, if any, underlying the No. 8 or Pittsburgh vein of coal, together with the right to mine and remove the same, and transport such from other lands thereunder, provided, however, that such mining, removal and transporting shall be conducted so as to in no manner interfere with the mining operation of the Grantee herein, Pittsburgh Consolidation Coal Company its successors or assigns." (recorded on November 18, 1957 at Volume 141, Page 115) (referred to as the "Lawlis reservation").

**{¶4}** It is undisputed that the Northam Appellees' predecessors-in-interest reserved the severed mineral rights underlying the 16.922 acres, and that the Northam Appellees ultimately became the holders of that mineral rights reservation. (Second Am. Compl., at ¶ 50-51, 78).

**{¶5}** There is confusion in the deed history. The deed that contains the Northam reservation from R.C. and Georgia Northam to Healy Bros. and Company was recorded in the Harrison County Recorder's Office on June 25, 1948 in Deed Book 124, Page 128. The Appellants next refer to a 1963 deed from Consolidation Coal Company to Alfred O. Haverfield, Marguerite Haverfield Hurless and Harold C. Haverfield, as their root of title deed, recorded on November 22, 1963 at Deed Book 150, Page 4. There are no deeds or transfers in evidence to demonstrate the chain of title between Healy Bros. and Company and Consolidation Coal Company. There is a reference in the root of title deed, as well as the subsequent conveyances thereafter, to ". . . 16.922 acres of a 97.437 acre tract conveyed by Charles C. Simpson, et al to Pittsburgh Consolidation Coal Co. by deed dated May 26, 1952, which deed is recorded in Volume 131, page 245, Deed Records of Harrison County, Ohio." The 1952 deed does not appear in the record. Regardless, all parties have asserted as an undisputed fact that the Northam heirs are the holders of that reservation. In the first motion for summary judgment filed by Chesapeake in 2014, there is a footnote which refers to the 1963 Deed in which Consolidation Coal conveyed its interest to Alfred O. Haverfield, et al. It included language reserving all of the oil and gas underlying the premises, but the oil and gas interest had already been reserved by the Lawlis Reservation prior to Consolidation Coal receiving title to the property. Further, Consolidation Coal was voluntarily

dismissed as a party pursuant to Plaintiff's Amended Complaint.

**{¶6}** It is undisputed that the Lawlis Appellees' predecessors-in-interest reserved the severed mineral rights underlying the 14.024 acres, and that the Lawlis Appellees ultimately became the holders of that mineral rights reservation. (Second Am. Compl., at ¶ 56-57, 80)

**{¶7}** It is undisputed by the Northam and Lawlis Appellees that prior to entering into current oil and gas leases with Appellee Chesapeake in 2012 and 2013 for the mineral rights underlying the two tracts of land, no "savings event" had taken place during the time period prescribed in R.C. 5301.56 to preserve either of the mineral interests. (Second Am. Compl., at ¶ 82, 83, 87-94).

**{¶8}** It is undisputed that the Appellants are the current surface owners of the two tracts of land, which they acquired in 2008.

**{¶9}** Appellants argue that the "root of title" forming the basis for their claim that the Northam Reservation was extinguished under the MTA is the deed dated November 5, 1963, and recorded on November 22, 1963, at Deed Volume 150, Page 4 of the Harrison County Recorder's Office. Appellants argue that from that date through September 8, 2008 (when they purchased the surface property) the Northam Reservation was not subject to any events that would act to preserve that interest under the MTA. Appellants assert that the Reservation was not specifically identified and referenced in Appellants' "root of title" or any title document between November 22, 1963 and September 8, 2008. Appellants maintain that as a result, the Northam Reservation was extinguished by operation of the MTA on September 8, 2008.

**{¶10}** Appellants filed the underlying action on November 13, 2013, seeking declaratory judgment and quiet title relief relating to the severed mineral interests at issue. Appellants asserted claims pursuant to the Marketable Title Act (MTA) as to the Northam reservation, and under the 1989 Dormant Mineral Act (DMA) as to both of the severed interests.

**{¶11}** On February 10, 2015, the trial court stayed the case pending the Ohio Supreme Court's resolution of then-pending cases involving the 1989 DMA.

**{¶12}** On November 2, 2016, the trial court dissolved the stay and granted Appellants leave to file a second amended complaint, which asserted the MTA claim as

to the Northam reservation only, and asserted claims as to both of the reservations under the United States Constitution as a result of the Ohio Supreme Court's decision in *Corban v. Chesapeake Exploration, L.L.C., et al.,* 2016-Ohio-5796.

**{¶13}** Appellants admit they have not submitted a claim pursuant to the 2006 DMA as to either of the mineral interests or reservations.

**{¶14}** On January 17, 2017, Appellants filed a motion for summary judgment before the trial court. On January 18, 2017, Appellees filed multiple motions for summary judgment.

**{¶15}** The trial court heard oral argument on the pending motions for summary judgment on April 3, 2017.

**{¶16}** On May 4, 2017 the trial court issued a Judgment Entry overruling the Appellants' Motion for Summary Judgment, specifically finding the constitutional arguments asserted by Appellants as meritless. The trial court granted the motions for summary judgment filed by Appellees, "for the reasons set forth in the Memorandums in support of those motions and on the basis of the authorities cited." (JE at 6).

**{¶17}** Appellants filed the instant timely appeal.

### First Assignment of Error

The trial court erred in granting summary judgment to the Northam Appellees because their severed mineral interest was extinguished under the Ohio Marketable Title Act.

**{¶18}** An appellate court conducts a *de novo* review of a trial court's decision to grant summary judgment. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). As such, this Court shall apply the same test as the trial court in determining whether summary judgment was proper. It is the initial burden of the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt,* 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts to show that there is a genuine issue of material fact. *Id.*; Civ.R. 56(E).

**{¶19}** Appellants argued before the trial court that they should be declared the

owners of their real property, free and clear from the two severed mineral interests at issue. It is undisputed that Appellants did not satisfy the procedural requirements of the 2006 DMA in order to deem the severed mineral interests abandoned, and no claim was advanced in that regard. Appellants argue that the trial court erred by failing to hold that the Northam Reservation was extinguished under the MTA.

**{¶20}** Appellants argue that the Northam Reservation, created in 1948, was not specifically referenced within Appellants' "root of title" deed or any instrument thereafter. Appellants argue the interest was not subject to any preserving events or exceptions under the MTA, and should have been extinguished by the trial court.

**{¶21}** All of the Appellees argue that the Appellants were required to assert any claims regarding the severed mineral rights under the 2006 DMA, and that they cannot make an alternative argument under the MTA. However, even if an alternative argument could be made under the MTA, the Appellants' claim as to the Northam reservation still fails because Appellants do not have an unbroken chain of title to the oil and gas interest under R.C. 5301.48.

**{¶22}** There is no MTA claim by Appellants against the Lawlis Reservation. The Appellants identified a root of title deed recorded on November 18, 1957, but it is undisputed that a subsequent transfer of the interest in 1994 prevented the Appellants from obtaining a 40-year period to trigger application of the MTA to extinguish the Reservation. The sole argument against the Lawlis Reservation is Appellants' constitutional argument that was dismissed as meritless by the trial court.

**{¶22}** The legislature enacted the MTA to "simplify[] and facilitat[e] land title transactions by allowing persons to rely on a record chain of title." R.C.5301.55. The act allows that a party "who has an unbroken chain of title of record to any interest in land for forty years or more, has a marketable record title to such interest." R.C. 5301.48.

**{¶23}** The MTA "operates to extinguish such interests and claims, existing prior to the effective date of the root of title." R.C. 5301.47(A). The "root of title" is "that conveyance or other title transaction in the chain of title of a person * * * which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined." R.C. 5301.47(E). Pursuant to the MTA, "record marketable title

shall be held by its owner and shall be taken by any person dealing with the land free and clear of all interests, claims, or charges whatsoever, the existence of which depends upon any act, transaction, event, or omission that occurred prior to the effective date of the root of title." *Blackstone v. Moore*, 2017-Ohio-5704, 94 N.E.3d 108, ¶ 30 (7th Dist.), citing R.C. 5301.50, affirmed by *Blackstone v. Moore*, -- Ohio St.3d --, 2018-Ohio4959, --N.E.3d --, citing R.C. 5301.48. "A person who has an unbroken chain of title of record to any interest in land for forty years or more has a marketable record title to such interest." *Id.*, citing *Warner v. Palmer*, 7th Dist. No. 14 BE 0038, 2017-Ohio-1080, ¶ 30.

**{¶24}** Pursuant to the Ohio Supreme Court's recent holding in *Blackstone*, a royalty interest is subject to both the MTA and DMA. See *Blackstone*, supra.

**{¶25}** The Appellants are referencing a root of title deed in the instant case which was recorded on November 22, 1963, hypothetically giving rise to a claim of extinguishment under the MTA in 2003 (setting all other arguments aside as to whether the root of title deed was proper), which was before the enactment of the 2006 DMA, and before the Appellants became the surface owners of the subject property.

**{¶26}** However, this Court has previously held that a purported root of title that contains an exception for oil and gas is not a proper root of title "because it does not contain a fee simple title free of any such oil and gas exception and reservation." *Holdren v. Mann,* 7th Dist. No. 592, 1985 WL 10385, *2 (Feb. 13, 1985). See also *Christman v. Wells,* 7th Dist. No. 539, 1981 WL 4773, *1 (Aug. 28, 1981) (noting the deed reciting a reservation of royalties was not "the interest" claimed by appellant). In *Holdren,* the clause at issue stated "* * * and also reserving all oil and gas with the right to operate therefore* * *" and was repeated in the purported root of title. *Id.* at *1, *2. In *Christman,* the relevant clause that severed the oil and gas, and was subsequently repeated in multiple deeds in the chain of title (including the purported root of title deed), stated: "Excepting and reserving the one-half oil and gas royalty being 1/16th of the oil produced and 1/2 of the money received from the sale of gas." *Id.* In reviewing the severance clauses in *Christman* and *Holdren,* those Courts focused on the mere existence of the clause within the purported root of title deeds to prevent extinguishment pursuant to the MTA and did not examine whether the clauses were general or specific

within the root of title deed. See generally *Toth v. Berks Title Ins. Co.,* 6 Ohio St.3d 338, 340-341, 453 N.E.2d 639, 6 O.B.R. 394 (1983) (finding the root of title deed contained no mention of the setback use restrictions at issue in that case, but since there was a specific reference in a 1966 deed to the setback use restrictions, which deed was a part of the plaintiff's record marketable title, it was an "interest or defect which is inherent in the muniments" and not extinguished by the MTA); *Pollock v. Mooney,* 7th Dist. No. 13 MO 9, 2014-Ohio-4435, ¶ 6, 23-29 (finding the root of title deed contained no reference to the Sale of Royalty at issue and no deeds subsequent to the root of title repeated or referred to any prior oil or gas conveyance, such that extinguishment under the MTA was proper); *Murray Energy Corp, et al.. v. Pepper Pike, et al.,* 11th Dist. No. 90420, 2008-Ohio-2818, ¶ 25, 28 (finding the root of title did not contain the restriction on the sale or use of alcohol on the property, and there was no specific reference to the restriction for forty years following the root of title, such that the restriction was extinguished by the MTA).

{¶27} Appellants identify their Root Deed as the deed dated November 5, 1963, and recorded November 22, 1963 at Deed Volume 150, Page 4, of the Harrison County Recorder's Office. The Deed contains the following reservation:

> EXCEPTING AND RESERVING also unto said Grantor, Consolidation Coal Company, its successors and assigns, all the oil and gas and other minerals of whatsoever nature, kind or description in and underlying the above described premises * * *

{¶28} The Root Deed or "root of title" in the instant case does not purport to create any interest in oil or gas in the Appellants, or in any other person or entity from whom the oil and gas interest has vested in Appellants. In addition, the Appellants' chain of title contains the same exception of the oil and gas interest in each conveyance of the property in Appellants' chain of title. (Ex. 3 to Appellants' Jan. 17, 2017 MSJ). *See Christman, supra,* at *1(holding that since the "root of title" deed in that case recited the reservation of royalties, it was not "the interest claimed" by appellants as required pursuant to the definition of "root of title"). Similarly here, the "root of title" deed relied upon by Appellants contains the Consolidation Coal reference highlighted herein. As a

result, Appellants have not proven an interest free of any reservations or exceptions since the reservation is clearly stated within the "root of title" and the subsequent conveyances in the chain of title. Appellants' first assignment of error is without merit.

### Second Assignment of Error

> The trial court erred in granting summary judgment to the Lawlis Appellees and Northam Appellees because Appellants' *Corban* conclusive presumption of abandonment and related cause of action must, under the United States Constitution, must [sic] be confirmed in this litigation.

{¶29} Appellants argue that their interests in the abandonment of the Northam and Lawlis Reservations is a property right protected by the United States Constitution and cannot be abrogated by the enactment or application of the 2006 DMA. (Response to Northam and Lawlis MSJ at 4). Appellants note *Corban,* stating that "[B]y providing a conclusive presumption . . . the legislature provided an effective method of terminating abandoned mineral rights through a quiet title action." *Corban,* at ¶ 25. Appellants further argue that *Corban* did not determine whether the "conclusive presumption of abandonment and ownership," and related cause of action, raise property interests under the Fifth or Fourteenth Amendments of the United States Constitution, but only examined whether the 1989 DMA provided vested, substantive rights protected by one provision of the Ohio Constitution. *Corban* at ¶ 32-35. (Response to Northam and Lawlis MSJ at 5). Appellees, however, point out that Appellants repeatedly insert their own language into the *Corban* decision, referring to their characterization of 1989 DMA's creation of a "conclusive presumption of abandonment *and ownership, and related cause of action"* noting that the *Corban* decision only referred to a "conclusive presumption of abandonment" –not ownership—that "was only an evidentiary device that applied to litigation seeking to quiet title to a dormant mineral interest" – not a substantive property right as Appellants assert. *Corban* at ¶ 26. (Northam & Lawlis Response to Pltf. MSJ at 3; Chesapeake Response to Pltf. MSJ at 4). In addition, *Corban* noted that the "General Assembly has not divested the surface holder of a right to abandoned mineral interests that accrued prior to the effective date of the [2006 DMA], but rather, it modified only the method and procedure by which the right is

recognized and protected." *Corban* at ¶ 35. The *Corban* Court stated "evidentiary rules (such as the conclusive presumption established by the 1989 law) are procedural in nature, and therefore, changing them does not alter a vested substantive right." *Corban* at ¶ 35, citing *Ackison v. Anchor Packing Co.,* 120 Ohio St.3d 228, 2008-Ohio-5243, 897 N.E.2d 1118, ¶ 29.

**{¶30}** This Court recently overruled this same constitutional argument in accordance with *Corban,* in *Lower Valley Farm, LLC v. Croskey, et al.,* 7th Dist. Nos. 16 HA 0010, 16 HA 0011, 16 HA 0012, 2018-Ohio-814, ¶ 31, stating:

> It is clear from the Ohio Supreme Court's characterization, that a conclusive presumption is neither a property right nor a vested substantive right. It is simply an evidentiary device used in litigation. Therefore, any modification to, or "taking" of, the presumption cannot be held to be unconstitutional as alleged by Lower Valley.

**{¶31}** The Fifth District has previously dismissed the argument that "prior to *Corban,* vested rights were created in property owners and that taking those vested rights away constitutes an unconstitutional taking." *Wendt, et al. v. Dickerson, et al.,* 5th Dist. No. 2017 AP 08 0024, 2018-Ohio-1034, ¶ 29, held that in accordance with the majority's rationale in *Corban,* the General Assembly did not divest a surface holder of a right to abandoned minerals accrued prior to June 30, 2006. The *Corban* majority found the 1989 DMA was not self-executing and did not automatically transfer ownership of dormant mineral rights by operation of law because a surface holder was required to commence a quiet title action seeking a decree that the dormant mineral interest was deemed abandoned. At most, the 1989 DMA created an evidentiary presumption to be applied in a quiet title action that these rights would vest if certain conditions were not proven by the mineral owner. The *Wendt* court explained that even if the appellants in that case were successful in arguing that the 1989 DMA could have conferred some right to them following the use of the evidentiary presumption, their due process rights were not violated. Property rights in the Appellants never vested, since their action before the trial court was not filed prior to the effective date of the 2006 DMA. *Id.* at ¶ 33. The court also stated that the 2006 DMA merely modified a remedial right, not a

substantive right, and did not violate the Takings Clause. *Id.* at ¶ 35. Since no right was vested, no unconstitutional "taking" could occur. Similarly here, the Appellants' case before the trial court was not initiated prior to the effective date of the 2006 DMA as it was filed in 2013. Appellants, like the *Wendt* appellants, had "at most, a contingent right that never vested." *Id.*

{¶32} Thus, based on all of the above, Appellants' first and second assignments of error are without merit and the judgment of the trial court is affirmed.

**Donofrio, J., concurs.**

**Waite, P. J., concurs.**

[Cite as *Hickman v. Consolidation Coal*, 2019-Ohio-492.]

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed. Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**