[Cite as *McClellanv. McGary*, 2020-Ohio-1109.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MONROE COUNTY

GARY MCCLELLAN ET AL.,

Plaintiffs-Appellees,

v.

MARIAN MCGARY AKA MARION MCGARY ET AL.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 19 MO 0018

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2017-411

**BEFORE:**
David A. D'Apolito, Gene Donofrio, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Jason Yoss,* and *Atty. Ryan Regel,* Yoss Law Office, 122 North Main Street, Woodsfield, Ohio 43793, for Plaintiffs-Appellees and

*Atty. Andrew Lycans,* Critchfield, Critchfield & Johnston, 225 North Market Street, P. O. Box 599, Wooster, Ohio 44691, for Defendants- Appellants.

Dated:  March 23, 2020

_____

**D'APOLITO, J.**

{¶1}    Defendants-Appellants, Marian McGary aka Marion McGary, Larry McGary, Richard Clegg, Donna L. Craig, Terry L. Craig, Karen McKelvey, Kenneth McKelvey, Robert D. Clegg, Connie Waltz, Margaret H. Clegg, Marcia L. Clegg, Cindy Gordon, Paul E. Gordon aka Paul E. Gordon, Jr., Jeff Clegg, Roger K. Rufener, and Janet Lee Deal ("Appellants" or "McCaslin heirs"), the purported mineral interest owners,  appeal the decision of the Monroe County Court of Common Pleas granting the motion for summary judgment filed by Plaintiffs-Appellees, Gary and Jerry McClellan ("Appellees"), the surface owners, and denying Appellants' cross motion for summary judgment, in this action for declaratory judgment and to quiet title, filed pursuant to the Marketable Title Act ("MTA") and the Dormant Mineral Act ("DMA").  The trial court found that a mineral interest exception in a 1921 warranty deed was extinguished by operation of the MTA.

{¶2}    In their first assignment of error, Appellants assert that the trial court erred in concluding that a warranty deed recorded in 1974 was Appellees' root of title, because it contains a specific reference to an oil and gas exception in a 1947 deed.  In support of their assertion, Appellants cite our decisions in four cases, *Miller v. Mellott*, 7th Dist. Monroe No. 18 MO 0004, 2019-Ohio-504, 30 N.E.3d 1021, decision clarified on reconsideration *Miller v. Mellot*, 7th Dist. Monroe No. 18 MO 0004, 2019-Ohio-4084, reconsideration denied *Miller v. Mellot*, 7th Dist. Monroe No. 18 MO 0004, 2020-Ohio-237, appeal allowed, *Miller v. Mellott*, 2020-Ohio-313, and *Hickman v. Consolidated Coal Co.*, 7th Dist. Columbiana No. 17 CO 0012, 2019-Ohio-492, which cited with favor *Christman v. Wells*, 7th Dist. Monroe No. 539, 1981 WL 4773, (Aug. 28, 1981) and *Holdren v. Mann*, 7th Dist. Monroe No. 592, 1985 WL 10385, *2 (Feb. 13, 1985). *Christman* and *Holdren* stood for the proposition that a root of title must contain a fee simple title free of any oil and gas exception and reservation.

{¶3}    However, after briefing was complete in the above-captioned appeal, we granted motions for reconsideration in *Miller* and *Hickman*, and recognized that *Christman* and *Holdren* were no longer good law based upon the Ohio Supreme Court's decision in *Blackstone v. Moore*, 155 Ohio St.3d 448, 2018-Ohio-4959, 122 N.E.3d 132. See *Miller*

*v. Mellott*, 7th Dist. Monroe No. 18 MO 0004, 2019-Ohio-4084 and *Hickman v. Consolidation Coal Co.*, 7th Dist. Columbiana No. 17 CO 0012, 2019-Ohio-4077. In *Blackstone,* the root of title contained a specific reference to the particular mineral interest at issue in that case. Based on intervening case law from this District, we find that the trial court did not err in concluding that the 1974 deed is Appellees' root of title.

{¶4}    In their second assignment of error, Appellants contend that the specific provisions of the Dormant Mineral Act, R.C. 5301.56, prevail over the general provisions of the MTA. For the reasons previously set forth in *West v. Bode*, 7th Dist. Monroe No. 18 MO 0017, 2019-Ohio-4092, appeal allowed, 157 Ohio St.3d 1535, 2020-Ohio-122 (2020), we find that Appellants' second assignment of error is meritless. Therefore, the judgment entry of the trial court extinguishing the mineral interest in this case pursuant to the MTA is affirmed.

## STANDARD OF REVIEW

{¶5}    This appeal is from a trial court judgment resolving a motion for summary judgment. An appellate court conducts a *de novo* review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

{¶6}    "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264

(1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Doe v. Skaggs*, 7th Dist. Belmont No. 18 BE 0005, 2018-Ohio-5402, ¶ 11.

{¶7} The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327.

## FACTS AND PROCEDURAL HISTORY

{¶8} Appellees are the undisputed owners of the surface rights to approximately 74.94 acres in Monroe County, Ohio ("Property"), which they acquired by warranty deed on November 18, 2005. On December 13, 2017, Appellees filed this declaratory judgment action against Appellants and Eileen E. Beaver nka Eileen E. Cartwright, Beverly Beaver, Sandra K. Hopton nka Sandra K. Bottenfield, Bonnie L. Hopton nka Bonnie L. Carter, Richard J. Ashcroft, Dale A. Aschcroft, David L. Ashcroft, Edward J. Ashcroft, Robert J. Kiedaisch aka Robert J. Furedy, and Marlene Kiedaisch ("Kiedaisch heirs"), all purported mineral interest owners in the Property.

{¶9} Appellees sought a declaration that any mineral interest in the Property held by the McCaslin and Kiedaisch heirs had been extinguished pursuant to the MTA; a declaration that the Kiedaisch interest was predicated upon a repetition of the language creating the McCaslin interest, which did not constitute a new exception; a declaration that the mineral interests had been deemed abandoned pursuant to the 1989 DMA; a declaration that the Ohio Supreme Court's decision in *Corban v. Chesapeake Exploration, L.L.C.*, 149 Ohio St. 3d 512, 518 (2016) violated Appellees' constitutional rights; and an order quieting title to the mineral interests associated with the Property.

{¶10} Appellants filed an Answer and Counterclaim, seeking a declaration that the McCaslin interest had not been abandoned under MTA, and a declaration that the

mineral-specific provisions of the DMA prevail over the general property interest provisions of the MTA. They further sought damages for slander of title and an order quieting title as to the McCaslin mineral interest.

{¶11} Appellees and the Kiedaisch heirs filed a Notice of Settlement on May 14, 2019. Appellants and Appellees filed cross-motions for summary judgment. The following relevant facts are a part of the record on appeal.

{¶12} On April 20, 1901, a handwritten warranty deed was recorded in which Margaret T. Williams transferred the Property to Robert F. McCaslin and Irene McCaslin ("Williams deed"). The deed included the following exception: "The grantor in this deed excepts 1/2 of the 1/8 of the oil produced from the above described premises during her natural lifetime * * * ."

{¶13} On March 21, 1921, a warranty deed was recorded transferring the Property from the McCaslins to John Keidaisch ("McCaslin deed"). The deed included the following exceptions and provision ("McCaslin exception"):

> Exception: Excepting herefrom the One half 1/2 of the royalty of Oil underlying above described premises unto Margaret T. Williams for and during her natural life as set forth in a deed made by Margaret T. Williams to Robert F. McCaslin and recorded in Volume 58, page 612-613 in the Record of Deeds of said County.
>
> Exception: Said grantor hereby reserves unto himself, assigns and heirs the one half of the one half or 1/4 of the royalty of oil and 1/2 of the gas underlying said premises in fee.
>
> Provision: It is provided and understood that upon the death of Margaret T. Williams, the above one half royalty held by her, shall be equally divided between said grantor and grantee herein or their heirs or assigns, to wit, 1/4 to grantor and 1/4 to grantee or their respective heirs or assigns.

{¶14} On August 1, 1942, an affidavit of transfer was recorded noting the transfer of John Kiedaisch's interest in the Property to his heirs based upon intestate succession. That same day, a warranty deed was recorded, which transferred the Property from the

recipients under the certificate of transfer to H.J. Walters. The deed contained a repetition of the McCaslin exception, that is, a verbatim recitation of the exception without any reference to the McCaslin deed, only the Williams deed.

{¶15} On November 3, 1947, a warranty deed was recorded at Monroe County Deed Record Volume 120, Page 607, which transfered the Property from H.J. Walters and his wife Sylvia to Donoto and Lola Finalli.  The deed included the following exception ( "Walters exception"):

> The grantors herein except all the oil and gas rights together with all leasing rights for oil and gas rights together with all leasing rights for oil and gas and the right at any time to go on said premises for drilling purposes. The grantees herein are to receive all rentals and the grantors are not to lease said premises for less than fifty cents ($.50) an acre.

{¶16} On November 15, 1960, a warranty deed was recorded transferring the Property from Lola Finalli to Donoto Finalli.  The deed excepted "oil and gas rights and leasing rights for oil and gas heretofore reserved (See Vol. 120, Page 607 of the Deed Records of Monroe County, Ohio.)"

{¶17} On March 3, 1972, a certificate of transfer was recorded noting the transfer of Donato [sic] Finalli's interest in the Property to his heirs based upon intestate succession; and excepted "all oil and gas rights and leasing rights for oil and gas heretofore reserved. (See reservations Volume 120 at Page 607 of the Deed Records of Monroe County, Ohio.)"

{¶18} On August 16, 1973, a warranty deed was recorded transferring the Property from the Finalli heirs to Arthur and Verla Lude.  The deed excepted "all oil and gas rights and leasing rights for oil and gas heretofore reserved. (See reservations Volume 120 at Page 607 of the Deed Records of Monroe County, Ohio.)"

{¶19} On January 31, 1974, a joint and survivorship deed was recorded transferring the Property from the Ludes to Elden and Inez McClellan. The deed excepted "all oil and gas rights and leasing rights for oil and gas heretofore reserved. (See reservations Volume 120 at Page 607 of the Deed Records of Monroe County, Ohio.)" The trial court identified the 1974 deed as Appellees' root of title deed.

{¶20} On November 18, 2005, Inez McClellan recorded an affidavit stating that Elden McClellan died on October 4, 1976. On November 18, 2005, a warranty deed was recorded transferring the Property from Inez McClellan to Appellees, but reserving a life estate in Inez McClellan. A termination of life estate was subsequently recorded noting that Inez McClellan died on November 28, 2015.

{¶21} On February 14, 2006, Appellees recorded an Affidavit pursuant to R.C. 5301.252, captioned "Affidavits on facts relating to title," in which they asserted that the McCaslin interest had been abandoned, and vested in them as the surface owners pursuant to the 1989 DMA. On December 8, 2012, Appellees, Inez McClellan, and Cindy McClellan entered into an oil and gas lease with Eclipse Resources I, LP.

{¶22} On January 17, 2017, Appellees and Cindy McClellan recorded an Affidavit of Abandonment pursuant to R.C. 5301.56. The Affidavit of Abandonment indicated that notice was provided to the McCaslin heirs during a period beginning on December 5, 2016 and ending on December 15, 2016. On February 1, 2017, Appellants recorded an Affidavit and Claim of Preservation of Mineral Interest, pursuant to R.C. 5301.56(C) and 5301.52. The Affidavit was filed within 60 days after the first of the McCaslin heirs was served with notice. In the fall of 2017, the McCaslin Heirs signed oil and gas leases with Eclipse Resources I, LP.

{¶23} On January 12, 2017, Appellees and Cindy McClellan recorded an Affidavit of Abandonment pursuant to R.C. 5301.56 with regard to the Walters exception. The Affidavit indicated that notice was provided to the Walters heirs by publication on December 8, 2016. On February 7, 2017, the McClellans recorded a Notice of Failure to File pursuant to O.R.C. 5301.56 with regard to the Walters exception. On March 16, 2017, the Walters heirs recorded an Affidavit and Notice of Claim Preservation of Mineral Interest.

{¶24} The trial court granted Appellees' motion for summary judgment and denied Appellants' cross-motion on August 12, 2019. The trial court found that the 1974 deed, which contained a reference to the Walters exception, was the root of title. The trial court further concluded that the muniments of the chain of title contained no specific reference to the McCaslin exception, and that no other provision of the MTA applied to prohibit extinguishment of the McCaslin exception. The judgment entry reads, in pertinent part,

"Judgment in favor of the Plaintiffs shall further be noted by the recording of said Judgment Entry on the McCaslin Deed * * * , and the Root of Title Deed * * * ."

{¶25} Despite the fact that the trial court opined that the Walters exception was deemed abandoned as a result of Appellants' filing of the Notice of Failure to File pursuant to the DMA, the trial court did not enter an order quieting title. The judgment entry reads, in pertinent part, "[t]he Court further finds that there is no just reason for delay, and that this 'Judgment Entry Incorporating Findings of Fact and Conclusions of Law' is a final appealable order, as defined under Civil Rule 54." This timely appeal followed.

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED IN HOLDING THAT APPELLEES' ROOT OF TITLE IS A DEED WHICH EXCEPTED ALL OIL AND GAS FROM THE CONVEYANCE.**

{¶26} The MTA was enacted to "simplify[ ] and facilitat[e] land title transactions by allowing persons to rely on a record chain of title." R.C. 5301.55. Thus, the Act provides that a person "who has an unbroken chain of title of record to any interest in land for forty years or more, has a marketable record title to such interest." R.C. 5301.48. The marketable record title "operates to extinguish such interests and claims, existing prior to the effective date of the root of title." R.C. 5301.47(A).

{¶27} The MTA facilitates title transactions, as the record marketable title "shall be taken by any person dealing with the land free and clear of all interests, claims, or charges whatsoever, the existence of which depends upon any act, transaction, event, or omission that occurred prior to the effective date of the root of title." R.C. 5301.50. A "root of title" is "that conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by the person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined." R.C. 5301.47(E).

{¶28} We recently observed in *Senterra Ltd. v. Winland*, 7th Dist. Belmont No. 18 BE 0051, 2019-Ohio-4387, ¶ 52, modified on reconsideration *Senterra Ltd. v. Winland*, 7th Dist. Belmont No. 18 BE 0051, 2019-Ohio-5458, that a "root of title" has two elements

– one temporal and the other substantive, and both elements must exist to be a root of title:

> The temporal element for a "root of title" is a title transaction that is at least 40 years preceding the date when marketability is being determined. Once that title transaction is found, it must be determined whether that title transaction meets the second element. This substantive element requires the title transaction to purport "to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title." R.C. 5301.47(E). A "root of title" cannot be the initial severance deed of the interest the person is seeking to have extinguished. This is because record marketable title extinguishes interests and claims existing prior to the effective date of the root of title, not when the interest and claims were created in the "root of title." R.C. 5301.47(A).

*Id.* at ¶ 53.

{¶29} The Ohio Supreme Court has recognized that the desire to facilitate title transactions is balanced against the need to protect interests that predate the root of title in the MTA. To that end, the MTA provides that the marketable record title is subject to interests inherent in the record chain of title, "provided that a general reference * * * to * * * interests created prior to the root of title shall not be sufficient to preserve them, unless specific identification be made therein of a recorded title transaction which creates such * * * interest." R.C. 5301.49(A).

{¶30} Appellants contend that the trial court predicated its conclusion that their mineral interest was extinguished by operation of the MTA on the wrong deed, citing two of our 2019 decisions, *Miller* and *Soucik, supra,* which relied on two earlier decisions from the 1980s, *Christman* and *Holdren, supra.* In *Christman, supra,* the purported root of title was a 1926 deed, which read, in pertinent part, "[e]xcepting and reserving the one-half oil and gas royalty being 1/16th of the oil produced and 1/2 of the money received from the sale of gas." *Christman, supra,* at *1. The panel found that the 1926 deed contained a repetition of the reservation of royalties from the 1925 severance deed.

Case No. 19 MO 0018

**{¶31}** The panel held that "'[t]he interest claimed' by the [surface holders] is an interest free of [the] reservation of royalties, a fee simple." *Id.* As a consequence, the panel concluded that the 1926 deed was not the root of title "because such instrument contains, within it, a repetition of the original exception of all the oil and gas." The panel reasoned that the 1926 deed could not be the root of title "because it does not contain a fee simple title free of any such oil and gas exception and reservation." *Id.*

**{¶32}** After disqualifying the 1926 deed, the panel continued back through the deed history and identified a 1923 deed, which transferred a fee simple, as the surface owner's root of title. Because the 1925 severance deed was a title transaction in Christmans' chain, based on the 1923 root, the panel concluded that the MTA did not extinguish the prior mineral interest.

**{¶33}** Likewise, in *Holdren, supra,* the panel recognized that the purported root of title contained a repetition of an oil and gas exception from the prior severance deed. Because the purported root did not convey "a fee simple, free of any such oil and gas exception," the panel continued back through the deed history and identified an 1881 deed, which transferred a fee simple, as the surface holders' root of title. As a result, the severance deed was a title transaction in Holdrens' chain, based on the 1881 root, the panel, with one judge dissenting, concluded that the MTA did not extinguish the prior interest. In his dissent, Judge O'Neill advocated a specific-analysis test, and concluded that the repetition was not specific enough to prevent extinguishment by operation of the MTA. *Id.* at *3-4.

**{¶34}** However, in 2018, the Supreme Court of Ohio issued its decision in *Blackstone, supra,* in which the Court concluded that a specific reference to a prior mineral interest in the root of title deed was sufficient to preserve the interest. The root of title deed in *Blackstone* read, in pertinent part, "[e]xcepting the one-half interest in oil and gas royalty previously excepted by Nick Kuhn, their [sic] heirs and assigns." The Ohio Supreme Court concluded that the reference was sufficiently specific to preserve the Kuhn interest.

**{¶35}** As a consequence, we have repeatedly recognized that *Christman* and *Holdren* are no longer good law following the Ohio Supreme Court's decision in *Blackstone*. See *Miller, supra, Hickman, supra, Senterra, supra*. Further, in *Senterra,* we

observed that "the 'root of title' can contain a repetition of a reservation; the deed must merely account for the interest the person is claiming to have record marketable title to and not be the severance deed." *Id.*

**{¶36}** Based on intervening case law from this District, we find that the trial court correctly identified the 1974 deed as Appellees' root of title. Although the deed contains a prior deed reference, it accounts for the interest in which Appellees claimed record marketable title (the minerals) and is not the severance deed.

**{¶37}** Next, Appellants argue that the mineral interest owner should not have any impact on the identification of the root of title. They argue that the 1974 deed would not be the root of title for the Walters heirs. To the contrary, if the 1974 deed fulfilled the temporal element, it would also fulfill the substantive element, that it purports to create the interest claimed by Appellees, upon which they rely as a basis for the marketability of their title. However, the 1974 root of title would not extinguish the Walters' mineral interest, because it contains a specific reference to that interest. Consequently, Appellants' second argument has no merit.

**{¶38}** For the foregoing reasons, we find that the trial court did not err in concluding that the McCaslin exception was extinguished by operation of the MTA. We further find that Appellants' first assignment of error is meritless.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED IN HOLDING THAT THE SPECIFIC PROVISIONS OF THE MARKETABLE TITLE ACT GOVERNING ABANDONMENT OF MINERAL INTERESTS (KNOWN AS THE DORMANT MINERAL ACT) DO NOT CONTROL OVER THE PROVISIONS OF THE MARKETABLE TITLE ACT GOVERNING ABANDONMENT OR PROPERTY INTERESTS IN GENERAL.**

**{¶39}** For the reasons stated in *West v. Bode*, *supra*, we find that both the MTA and the DMA apply to mineral interests.

Case No. 19 MO 0018

## CONCLUSION

{¶40} In summary, we find that the trial court did not err in applying the MTA to the mineral interest at issue in this case or in finding that the 1974 deed was the root of title. For the foregoing reasons, the judgment entry of the trial court is affirmed.


Donofrio, J., concurs.

Robb, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is affirmed. Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**